[Filed May 7, 1890.]

# MARY A. MITCHELL, APPELLANT, v. W. B. CAMPBELL RESPONDENT.

ACTION TO RECOVER REAL PROPERTY—WHAT COMPLAINT MUST CONTAIN.—Under the Code of Civil Procedure of this State it is only necessary for the plaintiff in an action to recover the possession of real property to set forth in his complaint the nature of his estate in the property, whether in fee, for life, or a term of years; u for life, for whose life; if for a term of years, the duration thereof; and to allege that he is entitled to the possession of the property and that the defendant wrongfully withholds the same from him to his damage in the sum claimed by him. It is also necessary to describe the property with sufficient certainty to enable the possession thereof to be delivered, in case a recovery be had.

ANSWER—WHAT MUST CONTAIN.—The defendant must deny the allegations of the complaint which he desires to controvert, and if he claims that the property belongs to him or another, or claim any license or right to the possession thereof, he must set forth the nature and duration of such estate or license or right with the certainty and particularity required in the complaint; which really is all the facts that need be pleaded in the complaint and answer.

WHEN SALE MADE BY ADMINISTRATOR TO PAY DEBTS NOT NECESSARILY VOID.—A sale of real property belonging to the estate of a deceased person, made by an executor or administrator thereof, under an order of a county court sitting in probate, and having jurisdiction over the estate, is not necessarily void although the petition for the order of sale, the citation to the heirs, and the service of the citation are defective.

IRREGULARITIES IN SALE BY ADMINISTRATOR WHEN CURED BY ACTS OF 1874 AND 1878.—Such defects under the curative acts of 1874 and 1878 should be disregarded where the property sold at such sale has been purchased for a valuable consideration which has been paid by the purchaser to the executor or administrator or his successor in good faith, and the sale has not been set aside, but has been confirmed or acquiesced in by the court.

DEFECTS IN SALE BY ADMINISTRATOR WHICH MAY BE CURED BY LEGISLATION AND WHICH CANNOT BE.—The legislature has no power to make valid, by a retroactive statute, that which is inherently a nullity, nor render a sale of property efficacious when made in manner which it had no power to authorize; but when the sale is void merely in consequence of a failure to comply with the conditions upon which the power to make it was delegated by the legislature, and which it could have dispensed with in the beginning, and the sale been valid, it can, by the adoption of such a statute, legalize it.

STATUTE—WHEN THE COURT WILL DECLINE TO LOOK AT THE JOURNALS TO SEE IF PROPERLY ENACTED.—After an act of the legislature has been in force many years, and recognized and acted upon by the courts in numerous instances without any question having been made as to the manner of its passage, the court will regard it as having been duly adopted, and will not look into the journals of the two houses of the legislature in order to ascertain whether the bill for the act was read the number of times required by the constitution, or whether amendments proposed in one house were adopted by the other.

STATUTE OF LIMITATIONS—DISABILITY.—The act of the legislative assembly of the State, entitled, "An act to amend sections four and seventeen of chapter one of the Code of Civil Procedure, relating to the time of the commencement of an action to recover the possession of real property, approved October 17, 1878," limits such time to ten years only in case the party entitled to commence the action labor under none of the disabilities specified therein, one of which is, that the party at the time the cause of action accrued was a married woman.

MARRIED WOMAN HAS FIFTEEN YEARS IN WHICH TO COMMENCE AN ACTION TO
RECOVER HER REAL PROPERTY.—When a plaintiff, a married woman, brought an ac-
tion against a defendant to recover the possession of certain real property, claiming
to be the owner in fee of five-ninths thereof, four of the ninths by purchase from
certain heirs to the property, the other ninth by inheritance, and alleged that the
other four-ninths belonged to certain other heirs of the estate; and the defendant
set up as a defense adverse possession of the property, and it appeared that none
of the heirs to the estate were under any legal disability except the plaintiff, who
was such married woman at the time her right of action accrued and during all
the time of the adverse possession; *held*, that the plaintiff was entitled to the full
period of fifteen years in which to commence the action to recover the ninth
interest inherited by her; but that ten years' adverse possession was a sufficient
time to bar the right to recover any of the other interests in the property; and that
an instruction of the court upon the trial of the action, that ten years' adverse pos-
session was sufficient to bar the plaintiff's right of recovery without exception in
regard to the ninth interest inherited, was error; *held, further,* that while the error
affected only said ninth interest, yet it could not be corrected on appeal without a
reversal of the entire judgment and directing a new trial; *held, also,* that adverse
possession of real property for the period prescribed by the statute of limitations
vests a perfect title in the possessor as against the former holders of the title. The
decision upon the point in *Parker* v. *Metzger*, 12 Or. 409, approved.

APPEAL from Union county: J. A. FEE, judge.

The appellant commenced an action in the circuit court
to recover possession of certain real property, consisting
of a tract of land situated in said county of Union, claim-
ing to be the owner in fee of an undivided five-ninths
interest therein as tenant in common with four other par-
ties named in the complaint, who were alleged to be the
owners of the other four-ninths thereof. The complaint
contained two counts, both of which relate to the same
subject matter, and allege but one cause of action. An
answer was filed on the part of the respondent which con-
tained a denial of the material allegations in the complaint,
and also several defenses of new matter pleaded to the
respective counts. The first of which defenses was an
alleged ownership on the part of the respondent of the
property in controversy. The second one was that the
appellant's cause of action did not accrue within the period
prescribed by the statute of limitations. The third one
was adverse possession of the property by the respondent
for more than sixteen years. The fourth one was that the
property belonged to the estate of one P. M. Curry, who
died in said county about the year 1868; that in the course
of the administration of his estate it was sold at adminis-

trator's sale under an order of the county court of said
county, in due course of administration; that one F. T.
Dick became the purchaser thereof at the price of $605,
bidden therefor; that the sale was confirmed by the said
county court and a deed executed to the said Dick, and
that the respondent derived title through mesne convey-
ances from him in good faith and that more than five years
had elapsed since said sale. And the fifth one was that
the appellant ought not to be admitted to allege ownership
of, and right to possession to, said property, by reason of
the facts set forth in the fourth ground of defense.

The appellant, after filing a motion and a demurrer to
said answer, which were overruled by the court, filed a
reply to the several defenses of new matter set forth in the
said answer.

The first reply filed by the appellant was to the effect
that the said defenses were based upon the act of the
legislative assembly of the State of Oregon, entitled "An
act to amend section four and seventeen of chapter one of
the Code of Civil Procedure relating to the time for the
commencement of action to recover the possession of real
property, approved October 17, 1878," which act the
appellant alleged was void upon the ground that it was not
read by sections or otherwise on three several days in the
State senate, nor were the rules, requiring such reading,
suspended. That certain proposed amendments to said
act, made in the senate, were not constitutionally con-
curred in by the house of representatives, nor such amend-
ments passed by the house. That the title to the act was
not read as required by the constitution, nor passed by the
legislature.

To this reply the respondent interposed a general
demurrer, which was sustained by the court. The appel-
lant, thereupon, by leave of the court, filed a reply to the
defenses referred to, denying all the material allegations
therein set forth, except the one alleging that more than
five years had elapsed since said administrator sold the
property; and further replying, alleged that appellant on

and prior to the second day of October, 1869, and ever since, had been a married woman; also that the respondent was the administrator of the estate of said P. M. Curry, and as such fraudulently and corruptly caused and procured fictitious claims to be allowed by the said county court in his own favor, for the purpose of involving the same and of cheating and defrauding the heirs to the estate, including appellant, out of said land, and vesting a colorable title thereto in himself; that he obtained the possession thereof while acting as administrator of the estate, and while in such possession of the land obtained a pretended colorable title to the same by such fraud; also that the proceedings under which the sale by the administrator were made, copies of which were exhibited, were irregular and insufficient to authorize such sale; and the appellant alleged also many other fraudulent acts committed by the respondent in the management of the said estate as administrator thereof.

The issues between the parties, after having been made up as mentioned, were tried by a jury, who returned a verdict in favor of the respondent, which was to the effect that the appellant was not the owner of any interest in the lands described in the complaint nor entitled to the possession thereof, upon which verdict the judgment appealed from was entered.

*T. H. Crawford* and *J. W. Shelton*, for Appellant.

*James D. Slater,* for Respondent.

THAYER, C. J., delivered the opinion of the court.

The issues in this case are too prolix. A large amount of the labor bestowed thereon was unnecessary and served no purpose except to obscure the real points of contention between the parties. In an action to recover the possession of real property under the Code of this State, the plaintiff is required to set forth the nature of his estate in the property, whether in fee, for life, or a term of years, and for whose life and the duration of such term, and that

he is entitled to the possession thereof, and that the
defendant wrongfully withholds the same from him to his
damage in such sum as may be therein claimed. The com-
plaint must describe the property with sufficient certainty
to enable the possession thereof to be delivered in case a
recovery be had. The defendant may controvert the alle-
gations of the complaint, and if he claim that the property
belongs to him or to another, or claim any license or right to
the possession thereof, he must plead it in his answer, and
set forth the nature and duration of such estate, or license
or right to the possession, with the certainty and particu-
larity required in the complaint. This, substantially, is
all that is required to be pleaded in that character of
actions; all other matters being redundant and not neces-
sary to be spread upon the records.

Counsel for the appellant have urged a number of points
herein as error and have cited a great many authorities to
sustain them; but it seems to me that the main question in
the case to be tried, and which was tried in the circuit
court, was whether or not the appellant's action was barred
by the statute of limitations. The respondent's counsel
does not, so far as I can discover, contend that the probate
proceedings under which the property was sold at admin-
istrator's sale were strictly in conformity with the statute,
although he insists that the sale was made in good faith,
and that the funds realized therefrom were honestly applied
in the payment of debts existing against the estate of the
intestate; and that the irregularities and defects in said
proceedings were of such a character as would require the
courts, under the curative statutes of 1874 and 1878, to
disregard them. The effect of these statutes upon sales of
real property by administrators under irregular proceed-
ings, has not been determined by any adjudication of this
court which has come to my knowledge; but it seems to me
that they have an important bearing upon the decisions
regarding the validity of such sales when they are made in
good faith for the purpose of paying legal claims against
the estate administered upon. No one will contend that

the legislature has power to make valid that which inherently is a nullity, or render a sale efficacious when made in a manner which it had no power to authorize. Where, however, the sale is void merely in consequence of a failure of those having the direction of it to observe conditions imposed by the legislature itself, and which it could have dispensed with in the beginning and the sale have been valid, I do not see why it could not by a retroactive act cure the defect.

Section 3 of the act of 1878, entitled, "An act to cure defects in deeds heretofore made to real property that are defective in execution or acknowledgment, and to cure defects in judicial sales of real property, and sales of lands by executors and administrators," provides as follows: "All sales by executors and administrators of their decedents' real property in this State to purchasers for a valuable consideration which has been paid by such purchasers to such executors or administrators or their successors in good faith, and such sales shall not have been set aside by the county or probate court, but shall have been confirmed or acquiesced in by such county or probate court, shall be sufficient to sustain an executor's or administrator's deed to such purchaser for such real property; and in case such deed shall not have been given, shall entitle such purchaser to such deed, and such deed shall be sufficient to such purchaser," to entitle such purchaser to "all the title that such decedent had in said real property; and all irregularities in obtaining the order of the court for such sale, and all irregularities in making or conducting the same by such executor or administrator, shall be disregarded." And section 1 of the act of 1874, entitled, "An act for the relief of purchasers of real estate at sales made by administrators or executors," provides: "When any real estate has been heretofore, or shall be hereafter, sold by any executor or administrator, under or by virtue of any license or order of any county court in this State, and said sale shall have been approved by said county court, and the pur-

chaser shall have paid the purchase money for the same, and said sale shall have been made in good faith in order to provide for payment of the claims against said estate, and the executor or administrator shall have failed or neglected to make or execute any deed conveying such real estate to such purchaser, or if from mistake or omission in said deed, or defect in its execution, the same shall be inoperative, and the period of five years shall have elapsed after the making of such a sale, then, in such case, all such sales shall be and are hereby confirmed and approved, notwithstanding any irregularities or informalities in the proceedings prior to said sale."

These acts, according to my view, are wholesome regulations of law, and the heirs to the property sold have no grounds for complaint on account of the enforcement of their provisions. The title of the heirs to the property is subject to the paramount right of the government to direct its disposition, if necessary, for the purpose of liquidating existing claims against the estate of the decedent. The heirs' title vests in them by operation of law, but is subject to such right of disposition. If, therefore, the property is sold under an order of the probate court, by a duly-appointed and qualified executor or administrator, for the purposes mentioned, and a valuable consideration has been paid therefor by the purchaser in good faith, the heirs are not deprived of any vested right, although the conditions upon which the general statute authorized the sale to be made were not strictly complied with. Under the general statute the executor or administrator, in order to obtain a license to sell real property belonging to the estate of the decedent, must file a petition containing certain facts. The probate court must thereupon issue a citation to the heirs to show cause why the property should not be sold to pay claims against the estate, which must be returned with proof that it had been served in the manner prescribed by statute.

In proceedings of that character, a defect in the petition, citation or in the proof of the service of the citation, will,

under the general statute, render the sale a nullity. And although an order were made in due form to sell the property, and it were sold for its full value by the executor or administrator, and the proceeds were received by him and applied in good faith to the payment of the debts against the estate, which are charged by law upon the property, yet the heirs could reclaim it freed from such charge. For the purposes, therefore, of preventing such flagrant injustice, the said curative acts were passed. And it cannot be maintained that they were adopted in order to obviate the effect of mere informalities. The legislature, for the purpose of preserving to the heirs their inheritance, provided that certain prerequisites should be observed as a condition to the right of the representative to legally sell it. The effect of the said provision was, that a sale made without a compliance with such prerequisites was void, and in order to prevent such consequence in a certain class of cases, the said curative statutes were adopted. Their object evidently was to render valid sales made under the circumstances specified in the sections of said acts above set out, which would otherwise have been void. It was to prevent injustice, which is ample apology for upholding that character of legislation. The view I have endeavored to indicate herein is much better expressed in a note by Mr. Brightly appended to the decision in the case of *Wilkinson* v. *Leland*, 2 Peters, 627, as follows: "The legislature has power to validate a prior acknowledgment of a deed or mortgage: *Journey* v. *Gibson*, 56 Penn. St. 57, or to validate a void contract, *Watson* v. *Mercer*, 8 Pet. 88, such as the prior conveyance of a married woman. *Jones' Appeal*, 57 Penn. St. 369. To the objection that such laws violate vested rights of property, it has been forcibly answered that there can be no vested right to do wrong. Claims contrary to justice and equity cannot be regarded as of that character; consent to remedy the wrong is to be presumed. The only right taken away is the right dishonestly to repudiate an honest contract or conveyance to the injury of the other party. Even where no remedy

could be had in the courts, the vested right is generally unattended with the slightest equity. *Randall* v. *Kreiger*, 23 Wall. 149."

If the construction of the two acts suggested, which is obviously in accordance with the intention of the legislature, be correct, and the power to provide that a sale by an executor or administrator of the real property of the decedent shall be regarded valid, which under the existing law would have been deemed a nullity, reside in that body, then all the principal exceptions relied on by the appellant's counsel, aside from those relating to the statute of limitations, may easily be disposed of. That the power to validate a sale in such cases which in legal effect was void is within the province of legislative functions, is fully sustained by *Wilkinson* v. *Leland, supra.* Judge Story, who delivered the opinion of the court in that case, at page 658, says: "The question then arises whether the act of 1792"—referring to an act of the legislature of Rhode Island—"involves any such exercise of power"—to divest the vested rights of property, and transfer them without the assent of the parties. "It is admitted that the title of an heir by descent, in the real estate of his ancestor, and of a devisee in an estate unconditionally devised to him, is, upon the death of the party under whom he claimed, immediately devolved upon him, and he acquires a vested estate. But this, though true in a general sense, still leaves his title encumbered with all the liens which have been created by the party in his life-time, or by the law at his decease. It is not an unqualified, though it be a vested, interest, and it confers no title, except to what remains after every such lien is discharged. In the present case, the devisee under the will of Jonathan Jenckes, without doubt, took a vested estate in fee in the land in Rhode Island. But it was an estate still subject to all the qualifications and liens which the laws of that State annexed to those lands. It is not sufficient to entitle the heirs of the devisee now to recover, to establish the fact that the estate so vested has been divested; but that it has been divested in

a manner inconsistent with the principles of law." Again, at pp. 660, 661, he says: "What then are the objections to the act of 1792? First, it is said, that it divests vested rights of property. But it has been already shown that it divests no such rights, except in favor of existing liens of paramount obligation; and that the estate was vested in the devisee expressly subject to such rights. Then, again, it is said to be an act of judicial authority, which the legislature was not competent to exercise at all, or if it could exercise it, it could be only after due notice to all the parties in interest, and a hearing and decree. We do not think that the act is to be considered as a judicial act; but as an exercise of legislation. It purports to be a legislative resolution, and not a decree. As to notice, if it were necessary (and it certainly would be wise and convenient to give notice where extraordinary efforts of legislation are resorted to which touch private rights), it might well be presumed, after the lapse of more than thirty years, and the acquiescence of the parties for the same period, that such notice was actually given. But by the general laws of Rhode Island upon this subject, no notice is required to be or is, in practice, given to heirs or devisees, in cases of sales of this nature; and it would be strange if the legislature might not do, without notice, the same act which it would delegate authority to another to do without notice. If the legislature had authorized a future sale by the executrix for the payment of debts, it is not easy to perceive any sound objection to it. There is nothing in the nature of the act which requires that it should be performed by a judicial tribunal, or that it should be performed by a delegate instead of the legislature itself. It is remedial in its nature to give effect to existing rights.

"But it is said that this is a retrospective act, which gives validity to a void transaction. Admitting that it does so, still it does not follow that it may not be within the scope of the legislative authority in a government like that of Rhode Island, if it does not divest the settled rights of property. A sale had already been made by the execu-

trix under a void authority, but in entire good faith (for it is not attempted to be impeached for fraud), and the proceeds, constituting a fund for the payment of creditors, were ready to be distributed as soon as the sale was made effectual to pass the title. It is but common justice to presume that the legislature was satisfied that the sale was *bona fide* and for the full value of the estate. No creditors have ever attempted to disturb it. The sale, then, was ratified by the legislature, not to destroy existing rights, but to effectuate them, and in a manner beneficial to the parties. We cannot say that this is an excess of legislative power, unless we are prepared to say that in a State not having a written constitution, acts of legislation having a retrospective operation are void as to all persons not assenting thereto, even though they may be for beneficial purposes, and to enforce existing rights. We think that this cannot be assumed as a general principle by courts of justice. The present case is not so strong in its circumstances as that of *Calder* v. *Bull*, 3 Dall. 386, or *Rice* v. *Parkman*, 16 Mass. 326, in both of which the resolves of the legislature were held to be constitutional."

Whether the sale of the property in controversy by the administrator to the said F. T. Dick was made under circumstances that would bring the transaction within the provisions of said two acts, was a question of fact proper to be submitted to the jury ; and they may be presumed to have found by their verdict that the sale was made under such circumstances. And the appellant's counsel do not appear to claim that the proofs in the case were not sufficient to warrant the jury in so finding. Said counsel do, however, claim that the petition for the order to sell and the citation to the heirs were defective; but that, in view of the said curative acts, would not necessarily render the sale void. They, however, contend that the acts do not cure jurisdictional defects, and cite, among other authorities, the language of Mr. Cooley upon the subject in his work on Const. Lim. p. 457, 5th Ed., where he says: "A retrospective statute curing defects in legal proceedings

where they are in their nature irregularities only, and do not extend to matters of jurisdiction, is not void on constitutional grounds, unless expressly forbidden." But the learned author did not mean by this that defects arising from a failure to set forth the necessary facts prescribed by statute to confer jurisdiction upon a court in regard to a particular matter, could not be cured by subsequent legislation, where the court had general jurisdiction of the subject. He says at page 458, same work: "The rule applicable to cases of this description is substantially the following: If the thing wanting, or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law." Also at page 471: "But the healing statute must in all cases be confined to validating acts which the legislature might previously have authorized. It cannot make good retrospectively acts or contracts which it had and could have no power to permit or sanction in advance." This last clause indicates very clearly what the author did mean by "curing defects in legal proceedings where they do not extend to matters of jurisdiction." He evidently meant matters not within the jurisdiction of the legislature. That body could not cure a defect arising from a failure to serve process in an action or suit in accordance with some prescribed mode, as it has no power to authorize an adjudication against the party to the action or suit without such service being made. A failure to acquire original jurisdiction over the person or property of a defendant in any case would doubtless come under the same rule. But where a court obtains jurisdiction over a special subject matter given to it by law, as probate courts do over the estates of deceased persons

XIX. OR.—14.

after an executor or administrator of the estate has been duly appointed and qualified, and the court has proceeded to exercise its jurisdiction in regard to a matter connected therewith without having complied with the mode which the legislature had prescribed, but which it could have dispensed with, then, the proceeding of the court, although irregular and defective, could be confirmed by subsequent legislation when justice would thereby be promoted.

The appellant's counsel also contend that the circuit court committed error in refusing to give the following instruction: "If you find from the evidence that the defendant entered the premises without title, the fact that defendant has acquired by adverse possession, the title of the tenants in common who were not made parties to this action, does not preclude the plaintiff from recovering the whole of the premises." Said counsel attempt to sustain their contention that said instruction should have been given, upon the authority of *Chipman* v. *Hastings*, 50 Cal. 310, which seems to be in point. The supreme court of California held in that case that the question as to whether the title of the tenants in common, who were not parties, had been defeated by such an adverse possession on the part of the defendant, could be determined only in an action to which they were parties. The view taken by that court must have been that the legal title to the property was not acquired by adverse possession, that such possession would merely operate as a bar to the right of entry of the owner of the fee. Such, however, is not the rule in this State. This court held in *Parker* v. *Metzger*, 12 Or. 409, that adverse possession of real estate for the period prescribed by the statute of limitations vested a perfect title in the possessor as against the former holder of the title and all the world, and that he was entitled to all the remedies which were incident to possession under a written title. According to that view the respondent's tenure in the property was as certain under the proof of an adverse holding during the period prescribed by the statute of limitations as it would have been under an

absolute deed of conveyance from such tenants in common.

The point claimed by appellant's counsel that the act of the legislative assembly of the State, approved October 17, 1878, purporting to be an amendment to sections 4 and 17 of chapter one of the Code of Civil Procedure, was void for the reasons stated in the appellant's reply, cannot, at this late date, be entertained.   Said act had stood upon the statute book for nearly ten years, and been recognized and acted upon by the courts in a number of cases without being questioned.   Under such circumstances it should be presumed to have been adopted in conformity with the requirements of the constitution.   If the matter had been brought to the attention of the court soon after the act was passed it would have been proper to have inquired as to whether the bill was read in the respective houses the number of times, and in the manner prescribed by that instrument, and as to whether proposed amendments to it in one of the houses had been regularly concurred in by the other; but, after having been acquiesced in for so great a length of time, it would be highly detrimental to public interest to determine it invalid in consequence of an informality in its enactment, when it is evidently the express will of the legislature.   The effect of the act was to change the time for the commencement of an action to recover the possession of real property from twenty years to ten years, which has always been regarded by the community as a wholesome regulation, and I do not think that it would be either just or politic to decide it a nullity at this late date, even if the journals of the two houses of the legislative assembly do fail to show the facts claimed by appellant's counsel.

But the act of 1878, in prescribing the period of ten years in which an action shall be brought to recover real property, provides, among other things, that if any person entitled to bring the action be, at the time the cause of action accrued, a married woman, the time of such disability shall not be a part of the time limited for the commencement of the action; but the period within which the action shall be

brought shall not be extended more than five years by such disability, nor be extended longer than one year after it ceases. The appellant herein being a married woman at the time her alleged cause of action for the recovery of the ninth interest in the real property in question inherited by her arose, was entitled to the full period of fifteen years in which to commence her action to recover such interest, while she was only entitled to the period of ten years in which to commence her action for the recovery of the other interests conveyed to her, assuming what seems to be conceded by her counsel, that the statute had begun to run against the respective owners of those interests at the time they were so conveyed. The disability of the appellant was set forth in her reply to the defense of the statute of limitations contained in the answer, to which the respondent filed a demurrer and the court sustained it, and subsequently instructed the jury that ten years' adverse possession by the respondent was sufficient to bar her right of recovery, without making any exception in favor of the interest inherited by her. This was error. The holding should have been that the appellant was entitled to the period of fifteen years in which to commence the action to recover that particular interest. I doubt very much whether the error, as a matter of fact, prejudiced the appellant's case, as the jury very probably found that the sale of the property by the administrator under the curative acts was valid; but the appellant was entitled to the benefit of the law and may have been prejudiced by its having been withheld from her.

Another contention of appellant's counsel is, that the statute does not begin to run in such a case until the administration of the estate has fully terminated. I have no doubt but that the statute does not begin to run while the property is subject to the possession of the administrator for the purposes of being applied to the satisfaction of claims against the estate, as such possession is not inconsistent with the title of the heir.

Where, however, the administrator has sold the property under an order of the probate court, the sale been confirmed, and a deed executed to the purchaser, as was done in this case, the matter stands differently. There the sale and possession of the purchaser under it operate as disseizen of the heir, and the right claimed by the purchaser under the sale is in hostility to his title. And if such possession be open, notorious and continuous, under a claim of ownership of the property, during the period prescribed by the statute of limitations applicable in such cases, it will ripen into a valid title, although it were wrongful in the outset.

I am unable to discover any error in the record herein aside from the one suggested. The judgment appealed from should therefore be affirmed except so far as it affects the ninth interest claimed by the appellant in the property as heir at law of P. M. Curry, deceased; but as to that interest it should be reversed and the appellant have a new trial concerning her right to recover it in view of the law that her claim thereto, if she has any, is only barred by an adverse possession for the period of fifteen years; and such would be the order of the court if it had the legal right to make it. The court, however, is compelled to reverse the judgment *in toto,* and remand the cause to the circuit court for a new trial in accordance with the principles of this decision. Such will therefore be the order.