Argued January 23; decided March 16, 1896.

## CLARK v. BUNDY.

[44 Pac. 232.]

1. RUNNING OF STATUTE OF LIMITATIONS AGAINST HEIR PENDING ADMINIS-
TRATION.— CODE, §§ 1120, 1192, 1193.—In Oregon real estate descends
to the heir at once on the death of the ancestor without any pro-
bate proceedings, and the heir is entitled to take and hold posses-
sion unless the administrator takes possession, which he is entitled
to do under section 1120, Hill's Code. If the administrator exer-
cises his right and takes actual possession, the running of the stat-
ute of limitations against the heir is suspended during such posses-
sion; but the mere appointment of the administrator does not affect
the operation of the statute.

2. TRIAL BY COURT — FINDINGS.—The court in the trial of an action at
law without the intervention of a jury should make findings of
fact upon all the material issues made by the pleadings (*Drainage
District* v. *Crow*, 20 Or. 535, cited and approved); as, where the issue
of adverse possession is raised, instead of merely finding the ulti-
mate question whether adverse possession was established, the court
should find the facts proven on that subject.

3. ADVERSE POSSESSION — TACKING — VARIANCE.— A variance between the
name of the grantee in a deed executed in pursuance of a decree of
court, and the name of the purchaser as given in the decree, does
not destroy the effect of the deed as color of title, which will en-
able the grantee therein to tack his possession to that of the parties
whose interests are sold for the purpose of making out title by ad-
verse possession.

4. ADVERSE POSSESSION — TACKING.—A sale by a referee under partition
is not involuntary so as to prevent the purchaser thereunder from
tacking his possession to that of the parties whose interests are sold,
for the purpose of making out a title by adverse possession,— espe-
cially where the record shows that there was no resistance at any
stage of the proceedings.

APPEAL from Lane: J. C. FULLERTON, Judge.

This is an action by Lemuel A. Clark against
H. Bundy and others, commenced on September
eighteenth, eighteen hundred and ninety-three, to re-
cover possession of the undivided one half of certain

real property situate in Lane County, Oregon. The
defendants by their answer put in issue the material
allegations of the complaint, allege title in the de-
fendant H. Bundy, and plead the statute of limita-
tions. The facts which gave rise to the litigation
are about as follows: The plaintiff herein and W. J.
Clark are the sons of Lemuel A. Clark, sr., and
Sarah Clinkenbeard, who were married in the state
of Iowa, but were divorced November eighteenth,
eighteen hundred and fifty-two. Lemuel A. Clark,
sr., under the assumed name of Lemuel Klark, and
while yet the husband of Sarah Clinkenbeard, went
through the forms of marriage with Martha Hoff-
man, at Oregon City, Oregon, with whom he lived
and cohabited until his death, which occurred June
twenty-seventh, eighteen hundred and eighty-three.
There were born to Lemuel A. Clark, sr., and Mar-
tha Hoffman three children only, Martha Clark,
afterwards Mrs. J. W. Estabrook, Fannie Clark, mar-
ried to J. E. Watkins, and Lucy Clark, married to
R. C. George, all whom were born prior to Novem-
ber eighteenth, eighteen hundred and fifty-six. At
the date of the death of Lemuel A. Clark, sr., he
held the legal title, and, together with Martha Hoff-
man, was in the possession of the lands sued for.
Having died intestate, James Hoffman, the son of
Martha, was on July fifth, eighteen hundred and
eighty-three, appointed administrator of his estate,
and continued to act as such until January seventh,
eighteen hundred and eighty-four, when he was dis-
charged. The petition for appointment represents
the children of Martha Hoffman by Lemuel A.

Clark to be his only heirs, and the inventory contains a schedule of the real property the subject of this action. Trial was had before the court without the intervention of a jury, and its findings and judgment being for plaintiff defendants appeal.

REVERSED.

For appellants there was a brief and an oral argument by Messrs. George B. Dorris and A. C. Woodcock.

For respondent there was a brief and an oral argument by Mr. E. O. Potter.

Opinion by MR. JUSTICE WOLVERTON.

1. The question of the most vital importance in the case is, when did the statute of limitations begin to run against the plaintiff? He contends that the appointment of an administrator suspends the running of the statute in favor of the true heir of the deceased until the real property is surrendered to him by order of the court, or the estate is settled and the administrator discharged, and assigns as a reason therefor that under the Code, during administration, or until the real property is surrendered by order of the court, no action for possession will lie in favor of the heir, either as against the administrator or a stranger. We presume that if such appointment cut off plaintiff's right of action it would operate as a prohibition, and the pendency of the administration should not be considered as part of the statutory time for bringing the action: Blas-

*kower* v. *Steel*, 23 Or. 106 (31 Pac. 253). So that, if
the reason assigned is the legitimate result of legis-
lative enactments, it is tantamount to a concession
of the doctrine contended for. Whether this is so
or not we will now consider and determine. Section
1120, Hill's Code, provides: "The executor or admin-
istrator is entitled to the possession and control of
the property of the deceased, both real and personal,
and to receive the rents and profits thereof, until
the administration is completed, or the same is sur-
rendered to the heirs or devisees by order of the
court or judge thereof  *  *  *. During the time
the property is in the possession or control of the
executor or administrator, it is his duty to keep the
same in repair, and p.._erve it from loss or decay
as far as possible." Section 1192 provides: "The
real property of the deceased is the property of
those to whom it decends by law or is devised by
will, subject to the possession of the executor or ad-
ministrator, and to be applied to the satisfaction of
claims against the estate, as by this chapter pro-
vided; but upon the settlement of the estate, and
the termination of the administration thereof, so
much of the real property as remains unsold or un-
appropriated is discharged from such possession and
liability without any order or decree therefor." And
section 1193: "At any time after the filing of the
first semi-annual account, any heir, devisee, or leg-
atee may apply to the court, by petition, for an
order that he have the possession and rents and
profits thereof of the portion of the real property to
which he may be entitled, and that payment be

made to him of his legacy or distributive share of the personal property of such estate, as the case may be." These are all the statutes the interpretation whereof is required for a solution of the question in hand. It may be premised that at common law, unless diverted by a valid will, real property descended directly to the heir, and his right of entry became perfect at the death of the ancestor. With such property the administrator had nothing whatever to do, nor was he entitled to the rents, issues, and profits thereof. So that whatever rights the administrator has in this state to the possession, or to the rents, issues, and profits, of the lands of the deceased during the administration, exists wholly by virtue of statutory regulations: *Hanner* v. *Silver*, 2 Or. 336; *Jones* v. *Billstein*, 28 Wis. 227. This court held in the former of these cases, which was a proceeding for the partition of land, that under the Code, when administration is completed, the real property descends or goes directly to the heirs at law, without any order or decree therefor. Thus far we have a direct interpretation of the statutes in view.

In *King* v. *Boyd*, 4 Or. 326, which was a suit by an administrator to set aside a fraudulent conveyance of the intestate, BONHAM, J., speaking for the court, says: "The authority of an executor or administrator over the real estate of his decedent being in derogation of the common law, we think is, and ought to be, strictly limited to his rights and powers as created and defined by statute. * * * In this case * * * there was no occa-

sion or necessity for the sale of the same, or any part thereof, to pay claims against the estate. In the absence of any showing by the administrator that there was some necessity for their interference with the lots in question for some purpose of administration recognized by the statute, they had nothing to do with the same, and it was by law the absolute property of the heirs of William M. King, to whom it descended." *Humphreys* v. *Taylor*, 5 Or. 260, was an action to recover possession of real property, instituted by an administrator, and it was held the action would not lie. In the course of the opinion BURNETT, J., says: "The right of possession of the property of the deceased, given to the executors and administrators by section 1088 of our Code, (now section 1120, Hill's · Code,) is a mere statute power given them only for the benefit of creditors, and properly to be exercised only as the exigencies of the estate might require." These latter cases, although not direct adjudications respecting the statute of limitations as it affects real property pending administration, have a material bearing upon the statutory regulations under consideration. In *Mitchell* v. *Campbell*, 19 Or. 202, (24 Pac. 455,) THAYER, C. J., says: "Another contention of the appellant's counsel is that the statute does not begin to run in such a case until · the administration of the estate has fully terminated. I have no doubt but that the statute does not begin to run while the property is subject to the possession of the administration for the purpose of being applied to the satisfaction of claims against the estate, as such pos-

session is not inconsistent with the title of the heir." This language was used with reference to real property in the actual possession of the administrator, when it was claimed the statute could not run, and must be interpreted in the light of this fact as well as others surrounding the case. These are all the Oregon cases to which our attention has been called treating in any manner of the subject in hand; and, not being decisive, we are compelled to look elsewhere for more direct authority. Michigan has a statute very similar to ours in all material respects, which received judicial interpretation in several cases. The result may be stated briefly. The statute does not make it imperative upon the administrator to take possession of the real property of the deceased, but he has a right to the possession of such property, and to the rents, issues, and profits thereof for the purpose of enabling him to settle the estate; and whether he shall exercise the right in either case, or in one and not the other, is largely if not entirely discretionary with him. If the personal property was amply sufficient for payment of the debts and expenses of the administration, there would seem to be no necessity for the exercise of such right by him, otherwise it would be his duty to take and maintain possession as a means of speeding such settlement. Until the personal representative has asserted such statutory privilege, the heir has the right to take possession or maintain ejectment therefor against all other persons whomsoever; and not only this, he may enjoy the rents, issues, and profits also. See *Marvin* v.

*Schilling,* 12 Mich. 360; *Howard* v. *Patrick,* 38 Mich.
802; *Chapman* v. *Craig,* 37 Mich. 371; *Kline* v. *Moul-
ton,* 11 Mich. 381; *Campau* v. *Campau,* 19 Mich.
116; *Warren* v. *Tobey,* 32 Mich. 45. In *Streeter* v.
*Paton,* 7 Mich. 349, the earliest case upon the ques-
tion, some stress was laid upon the word "may,"
used in connection with the receipt of rents and
profits, as showing the discretionary power of the
personal representative, but the later cases cannot
be so distinguished.

Wisconsin seems to have copied from the Michi-
gan statute upon this subject, and in construing it
her supreme court has reached practically the same
conclusion. In *Jones* v. *Billstein,* 28 Wis. 228, LYON,
J., speaking for the court, says: "As we understand
this statute, it gives the personal representative the
power to reduce the real estate to his actual posses-
sion, should he think proper, or should the probate
court direct him so to do; but it does not impera-
tively require him to take possession thereof, and
until he does so the common law right of the heir
to the possession remains unimpaired." And in
*Marsh* v. *Board of Supervisors,* 38 Wis. 253, the
same judge says: "Until that right is asserted and
possession taken, the heirs may maintain ejectment
for the land." See also *Barker* v. *Barker,* 14 Wis.
162; *Filbey* v. *Carrier,* 45 Wis. 471; *Flood* v. *Pilgrim,*
32 Wis. 378. In Minnesota the judicial interpreta-
tion is the same. In *Noon* v. *Finnegan,* 29 Minn.
414, (13 N. W. 197,) MITCHELL, J., says: "We adopted
this statute from Wisconsin, which had previously
obtained it from Michigan," and, after stating the

result of the decisions of those states, and citing authorities, continues: "The principle running through all these cases is that the title to real estate vests, notwithstanding this statute, in the heir at the death of the ancestor; that he has the right to the possession, as before, subject only to the right of the personal representative, if he sees fit to assert it; that the personal representative has no title to or interest in the real estate, save only the privilege to claim the possession during administration; and that, until he asserts this right, the rights of the heirs or devisees are unaffected by the statute." See also *Miller* v. *Hoberg*, 22 Minn. 249; *Paine* v. *St. Paul Railway Company*, 14 Minn. 65. Other states have similar statutes, and the judicial interpretation has been the same. See *Gossage* v. *Crown Point Mining Company*, 14 Nev. 153; *McKee* v. *Howe*, 17 Colo. 538 (31 Pac. 115), and *Territory* v. *Bramble*, 2 Dak. 189 (5 N. W. 945). In the latter case it is said: "Our statute was taken from Wisconsin, whence it was taken from Michigan, and was afterwards enacted in Nebraska and Oregon." In California the administrator, contrary to the doctrine maintained in *Humphreys* v. *Taylor*, 5 Or. 260, can, under the statute of that state, maintain ejectment for the real property of the deceased, and it is so declared in Washington under a similar statute: *Meeks* v. *Hahn*, 20 Cal. 620, and *Balch* v. *Smith*, 4 Wash. 497 (30 Pac. 648). But those cases can have no bearing here.

So that, applying the interpretation of statutes elsewhere similar to our own touching the adminis-

tration of the estates of deceased persons, we con-
clude, as *King* v. *Boyd*, 4 Or. 326, and *Humphreys* v.
*Taylor*, 5 Or. 260, would seem to indicate, that this
statute does not affect the descent of real property
to the heir, except to burden it with the debts of
the ancestor if any exist; that the administrator has
the undoubted right to take and enter into posses-
sion and exercise control over it, or to receive the
rents, issues, and profits for the purpose of adminis-
tering upon the decedent's estate, if he sees fit, in
the exercise of the duties appertaining to his trust,
but it is not imperative that he should do so; and
that, unless the exigencies of the case demand it,
he need not disturb nor molest the heir in his pos-
session, and may only exercise control over the
personal property which legitimately goes to the
personal representatives, thence to the heir, if not
otherwise applied in due course of administration.
Beyond the intimation of our own cases, it is di-
rectly decided elsewhere, as we have seen, that un-
less the administrator asserts the right to and
obtains possession or control of the real property
of the decedent, the heir may maintain ejectment
therefor, as against strangers and all other persons
whomsoever. Coming now to the case in hand, the
plaintiff had his right of action throughout the
whole course of administration, provided the admin-
istrator did not claim and acquire possession of the
premises in dispute while acting in that capacity;
otherwise the action would not lie, and the statute
of limitations would have been suspended during
such possession. The question is one of fact whether

the administrator actually took possession, and, if he did, then for what length of time he retained it, so as to prevent plaintiff from suing. The court below was of the opinion that the mere fact that the estate was in course of administration suspended the statute, and its conclusion of law was the logical outgrowth of such holding; in this it was in error.

2. Where trial is had of an action at law by the court without the intervention of a jury, the court should make findings of fact upon all the material issues made by the pleadings: *Drainage District* v. *Crow*, 20 Or. 535 (26 Pac. 845). One of the issues made by the pleadings was that of adverse possession by one of the defendants. Upon this issue the court below, although requested by defendants so to do, made no finding of fact, so that we are unable to determine whether they have sustained their contention or not. There is a general finding contained in the record that Martha Hoffman remained upon the premises until November twenty-sixth, eighteen hundred and eighty-three, when they were rented to Dickenson, who took and held possession until October fifteenth, eighteen hundred and eighty-seven, etc., but this does not meet the objection; it should show whether or not such occupancy was actual, open, notorious, exclusive, continuous, and under claim of title. It is only from such a finding of fact that the court can conclude as a question of law whether the defense has been maintained, and the failure in that respect was error prejudicial to the defendants.

3. During the course of the trial a deed purporting to have been executed by W. T. Peet, a referee appointed by the Circuit Court of the State of Oregon for Lane County, in a suit therein pending wherein Fannnie B. Watkins, *née* Clark, and J. E. Watkins, her husband, were plaintiffs, and Martha Estabrook, *née* Clark, and J. W. Estabrook, her husband, and Lucy George, *née* Clark, and R. C. George, her husband, were defendants, to partition the premises in question between the parties thereto, and purporting to convey said premises to H. Bundy, was offered in evidence for the purpose of tacking his possession to that of the Clarks. To destroy the effect of the deed as a conveyance of title or possession, plaintiff in rebuttal offered the referee's report of sale and the decree of the court confirming the same, whereby it. appears that the premises were sold to N. Bundy, and the deed was ordered to be made and delivered to N. Bundy instead of H. Bundy. It is now contended for this record that it fails to disclose any privity of contract or estate between the Clarks and H. Bundy, as the judgment of the court does not authorize the deed, and hence that the continuity was broken, even if possession by the Clarks was adverse. To this we cannot give our assent. The deed offered was at least sufficient to give color of title, as it purports to convey the title of the Clarks to the premises in question to H. Bundy. Furthermore, there is evidence in the record tending to show that the Clarks, in pursuance of the deed, surrendered the possession to H. Bundy, and that he went in under them. If these facts stand proven,

there was sufficient established to transfer the possessory rights of the Clarks to H. Bundy, and this is all that is necessary to propagate continuity, and to keep the statute of limitation running: *Vance* v. *Wood*, 22 Or. 77 (29 Pac. 73).

4.   Some reference has been made to authorities holding that the necessary privity is wanting where the sale is involuntary, as by sheriff upon execution; but a sale by a referee under partition proceedings cannot be considered involuntary, especially where, as in this case, the record shows that there was no resistance by any of the parties at any stage of the proceedings.   We do not wish to be understood as deciding the question of the technical sufficiency of the deed on the face of the record to pass title absolute as between the Clarks and H. Bundy, regardless of the statute of limitations, as it is a question foreign to our present inquiry.

In this connection we may say our attention has been called to section 1126 of the statute, as having some bearing upon the question of adverse possession as it pertains to this case.   The section alluded to entitles the widow to remain in possession of the homestead until administration of the estate has been granted, and the inventory filed.   The question whether Martha Hoffman actually occupied the premises under the belief that she was exercising the statutory privilege accorded a widow, or adversely under claim of title, is also one of fact to be determined by the jury, or the court exercising the functions of that body.

The technical objection, possibly well taken, to the wording of the answer setting up the statute of limitations, made here for the first time need not be passed upon now, as the case must go back for further action by the trial court. The conclusions herein reached lead to a reversal of the judgment. The cause will be remanded, and a new trial had, and it is so ordered.        REVERSED.