Argued 10 Jan.; decided 19 Feb.; modified on rehearing 25 June, 1907.

## NOON'S ESTATE.

88 Pac. 673, 90 Pac. 673.

EXECUTORS—LIMIT OF JURISDICTION OF PROBATE COURT IN PASSING ON PETITION OF EXECUTORS OR ADMINISTRATORS.

1. In passing on petitions of executors or administrators for authority to perform specified acts, probate courts have no jurisdiction to issue orders covering other matters, their jurisdiction being limited to granting or denying the prayers of the petitions.

DESCENT OF REAL PROPERTY—APPLICATION OF STATUTE AFFECTING VESTED RIGHTS—RIGHT OF EXECUTORS TO SELL.

2. The title to real property of a decedent vests in the heirs at once upon death, without any proceeding, subject only to be sold for purposes then provided by statute, and any deprivation or impairment of such vested right by subsequent legislation is void.

A testator who had devised real property to his wife and children died while B. & C. Comp. § 1172 was in force, providing that personal property of a decedent not specially bequeathed should be primarily liable for the payment of debts, etc. During the administration of his estate an act (Laws 1905, pp. 223, 224, § 3) was passed amending the section so as to authorize a sale of the real estate of a decedent for the payment of debts before disposing of the personalty, where the interests of the parties would be subserved thereby. *Held*, that the rights of the devisees could not be impaired by the law of 1905, and, if the testator left personalty not specially bequeathed, the court could not order a sale of the realty until the proceeds of a sale of the personalty were exhausted.

WILLS—SPECIFIC BEQUEST DEFINED.

3. A specific bequest is a testamentary gift of a part of testator's personalty so accurately described that it can be identified from all other things of its kind.

SPECIFIC BEQUEST—SUFFICIENT DESCRIPTION OF CORPORATION STOCK.

4. A description of corporate stock bequeathed is sufficiently definite to make the bequest specific if referred to as "my stock," and the identification of the certificate will carry the gift.

WILLS—INTENT—SPECIFIC BEQUEST.

5. Specific bequests are not favored, but the wish of the testator will be carried out where the intent is clearly expressed.

A bequest of "all the shares of the N. B. Co. standing in my name in said company at the time of my decease" is sufficiently definite and certain to make clear the testator's intent and require such stock to be considered a special bequest, under Section 1172, B. & C. Comp., and therefore exempt from liability for the payment of debts until a resort thereto shall be necessary by reason of a failure to pay debts from the proceeds of the sale of the remaining property not specifically devised or bequeathed.

CONSTRUCTION OF SPECIFIC BEQUEST—DIVIDENDS ON STOCK.

6. A special devise of corporate stock carries dividends accruing thereon, and such dividends stand on the same footing as the stock itself, with reference to unpaid debts.

From Multnomah: MELVIN C. GEORGE, Judge.

Statement by MR. JUSTICE MOORE.

This is an application by executors to devote money to the payment of debts of a decedent's estate, and involves the construction of a will. The facts are that W. C. Noon executed his last will and testament June 23, 1891, directing all his just debts and funeral expenses to be paid as soon as convenient after his death, bequeathing to his wife, Emily Noon, all their household furniture, books, musical instruments, etc., and devising to her for the term of her natural life their family residence in the City of Portland, with the remainder in the premises over equally to his children, W. C. Noon, Jr., Lulu A. Freeman, Viola E. Noon, Ralph A. Noon and Alma E. Noon, to whom he also devised and bequeathed the residue of his property of every kind, subject, however, to the dower estate of his wife therein, and also to whatever right the law would have given her in such property had no testamentary disposition thereof been made. The will further provided that the daughters, Lulu A. Freeman, Viola E. Noon and Alma E. Noon, should have and hold their shares of his estate for the terms of their natural lives only, with the remainders therein over to their heirs at law; and, moreover, stipulated that none of his children should receive his or her share of such property until attaining the age of 25 years. The testator executed a codicil to his will December 30, 1903, bequeathing equally to W. C. Noon, Jr., T. J. Armstrong and H. M. Cake all shares of the capital stock of the W. C. Noon Bag Co., a corporation, standing in his name at the time of his death, in trust, however, to hold the same for the term of 10 years, granting to them all power incident to the ownership of capital stock and authorizing them to vote such shares at all meetings called for the purpose of electing directors or otherwise, provided that no resolution should be adopted for the dissolution of the corporation, unless, in the opinion of such trustees, that determination should become necessary to prevent the loss of the assets of the company. The supplemental will further provides that the trustees shall continue the business of the

corporation for the term specified and distribute dividends aris-
ing therefrom semiannually among the testator's beneficiaries,.
to whom such shares of stock should be delivered on the term-
ination of the trust. The trustees were also named in the codicil
as executors without bonds. W. C. Noon died August 9, 1904,.
and, his will and codicil having been admitted to probate in
Multnomah County, the executors named duly qualified for the
performance of their trust. The testator at the time of his
death was the owner of real and personal property as follows:
In Multnomah County, appraised at $47,260 and $12,142.18,
respectively, and in Columbia County at $33,754 and $10,493,.
respectively, and, in addition thereto, he also left the residence
which was devised to the widow, estimated at $15,000, and the
furniture, etc., given to her, worth $920, besides 1,149 shares of
the capital stock of the W. C. Noon Bag Co., of the face value
of $114,900, making the total assets of the estate $234,469.18.
The petition initiating the controversy herein was filed by the
executors W. C. Noon, Jr., and H. M. Cake, and shows that
claims against the decedent's estate had been allowed, amount-
ing to $59,588.49, of which sum $34,500 was due the W. C.
Noon Bag Co.; that, another claim of $4,500 having been dis-
allowed, an action thereon had been instituted and was then
pending; that prior to the filing of this petition the executors
last named secured an order of the county court directing the
sale of certain real property owned by the estate, but that no
disposal thereof had been effected; that the board of directors
of the W. C. Noon Bag Co. declared a dividend of $26,427 on
the 1,149 shares of stock held by the trustees, and also adopted
a resolution postponing the time of payment of the corporation's
claim of $34,500 against the decedent's estate; that the divi-
dend so announced is sufficient to pay all such debts, except the
demand of the W. C. Noon Bag Co., the claim so rejected; and
the allowance made for the support of the widow and her minor
children. The prayer of the petition is that the claims men-
tioned as being due might be paid from the sum of money so
on hand.

The executor Armstrong filed a remonstrance against such application of the dividend, on the ground that the resolution of the board of directors of the corporation, purporting to waive its right to the immediate payment of its claim, was not regularly adopted. Viola E. Noon and the widow, Emily Noon, for herself as legatee and devisee, and also as guardian of the persons and estates of Ralph A. Noon and Alma E. Noon, minor children of the testator, filed a remonstrance against the proposed application of such dividend, on the ground that the testamentary disposition of the shares of stock of the W. C. Noon Bag Co., for the term specified, with direction to the trustees to carry on the business of the corporation and to divide the proceeds arising therefrom semiannually among the testator's heirs at law, created a specific bequest of the stock and of the profits arising therefrom, which exonerated the stock and dividends from liability on account of the debts of the decedent's estate, until the property thereof not specially devised or bequeathed had been disposed of in discharging the claims and the expense of administration. The prayer of such remonstrance is that the request of the petitioners be denied, and that the executors be directed to sell the real and personal property liable for the payment of the debts of the estate, and from the money arising therefrom to discharge such claims and to pay the expenses of the administration. Lulu A. Werner, formerly Lula A. Freeman, and Stewart Freeman, her son, a minor, by his guardian *ad litem*, also filed a remonstrance against such application of the dividend on the same grounds, and prayed for the same relief as last hereinbefore mentioned.

Based on the petition and remonstrances, the county court made findings of fact and ordered that the dividend so declared should be exonerated from liability for the debts of the estate, and that the sum of $26,427, the profits on the stock of the W. C. Noon Bag Co., so announced, be distributed to the heirs at law named in the will, according to the provisions thereof and of the codicil, and directed the executors to comply with a former order respecting the sale of the real property therein des-

ignated, to dispose of the personal property of the estate not specially bequeathed, and to apply the proceeds thereof to the payment of the debts. Noon and Cake appealed from such order to the circuit court for Multnomah County, which affirmed the action of the county court. Thereafter the application of Cake to be discharged as an executor having been allowed, Noon and Armstrong separately appealed from the decree last rendered to this court.                    AFFIRMED.

For appellant Noon there was a brief over the name of *Cake & Cake,* with an oral argument on rehearing by *Mr. William M. Cake.*

For appellant Armstrong there was a brief over the name of *Wilson & Neal,* with an oral argument on rehearing by *Mr. Oscar Almamen Neal.*

For respondents there was a brief over the names of *Bauer & Greene* and *Hogue & Wilbur,* with an oral argument on rehearing by *Mr. Thomas Gabbert Greene.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. It is doubted whether or not that part of the decree requiring the executors to comply with the terms of a prior order of the county court directing a sale of real property to pay the claims against the decedent's estate is before us for consideration. It will be remembered that the executors Noon and Cake petitioned for an order authorizing them to apply the sum of $26,427 in payment of certain claims which had been allowed. An exercise of the power thus invoked was necessarily limited to the granting or denying of the prayer of the petition. A reiteration of the prior command to sell the land to pay the debts of the estate, when personal property not specially bequeathed was available, in part at least, for that purpose, could not give additional force to the original order, directing a sale of the real property.

2. The statute in force when the testator died made the personal property of a decedent's estate not specially bequeathed primarily liable for the payment of all debts against it and of

the expenses of administration thereon. If the proceeds of the sale of such property were insufficient for that purpose, the real estate might be sold to pay the claims that had been admitted, etc.: B. & C. Comp. § 1172. The section referred to was amended, after the death of the testator, so as to authorize a sale of the real property of a decedent's estate for the purposes mentioned, before disposing of the personal property, whenever it was made to appear to the county court or judge thereof that the best interests of all parties concerned therein would be subserved thereby: Laws 1905, p. 233. The original order of the county court, directing a sale of the real property of the estate before exhausting the personal property for the payment of the debts, was based on the amended statute of which Section 3 thereof is as follows:

"This act shall take effect and apply to any and all estates of decedents now unsettled and in course of administration as well as those hereafter probated": Laws 1905, pp. 233, 234.

In *State* v. *O'Day,* 41 Or. 495 (69 Pac. 542), Mr. Justice Bean, in speaking of means whereby the owner of land has the just possession thereof, says: "The title to real property descends to the lawful heirs immediately upon the death of the ancestor." At common law the real property of which a person died seised descended directly to his heir or devisee: 11 Am. & Eng. Enc. Law (2 ed.), 1035; *Clark* v. *Bundy,* 29 Or. 190 (44 Pac. 282). The widow and children of W. C. Noon on August 9, 1904, when he died, became seised of the real propetry devised to them, and their rights therein could not be defeated or impaired by subsequent legislation attempting to subject their land to a liability not imposed thereon when they became invested with the legal title thereto: *Brenham* v. *Story,* 39 Cal. 179; *Estate of Packer,* 125 Cal. 396 (58 Pac. 59: 73 Am. St. Rep. 58); *In re Newlove's Estate,* 142 Cal. 377 (75 Pac. 1083). The authority of a county court to order the sale of real property of a decedent's estate is not general, but limited, is derived from the statute conferring the right, and can be exercised only in the manner prescribed: *Haynes* v. *Meeks,* 20 Cal.

288. As the deceased left personal property not specially bequeathed which was primarily liable for the payment of his debts, the county court was powerless to order a sale of the real estate until the proceeds of the sale of the former class of property was exhausted. We conclude that the order directing the sale of any part of the real property was void; but, as the direction was not obeyed by the executors, no injury will result therefrom.

It is insisted that no citation was served on the minor heirs as required by law (B. & C. Comp. § 1168), without which jurisdiction of their persons was not secured, and that their general guardian and guardian *ad litem* were powerless to waive such service and could not enter a general appearance for them. We do not consider it necessary to discuss this question, for any doubt on the subject can be resolved when proper application is made by the executors to the county court to sell the real property of the decedent's estate, after disposing of the personal property not specially bequeathed, by strictly pursuing the mode prescribed in the statute as a means of securing such jurisdiction.

·3. Considering the case made by the petition and remonstrances, the question is whether or not the testator's disposal of the shares of stock of the W. C. Noon Bag Co., with direction to the trustees to continue the business of the corporation and equally to distribute the profits ·arising from such operation semiannually to the legatees and devisees named, created a specific bequest, thereby exonerating the shares of stock and the dividends that might be declared thereon from the payment of the debts of the decedent's estate until the other assets thereof had been applied in discharging such claims and the costs and expenses of the administration. The statute exempting particular property of a decedent's estate from primary liability for the debts thereof provides in effect that, if any article of personal property has been specially bequeathed, it is exonerated from the operation of the order of sale until resort thereto becomes necessary by reason of a deficiency in the payment of claims from the proceeds of the sale of other property: B. & C.

Comp. § 1171. A specific bequest is a testamentay gift of a part of the donor's personal property which corporal object or chose in action is so accurately described that it can be identified from all other things of its kind: 1 Roper, Legacies, *191; 18 Am. & Eng. Enc. Law (2 ed.), 714; *Johnson* v. *Goss,* 128 Mass 433; *In re Estate of Woodworth,* 31 Cal. 595.

4. The identity of a certificate which is issued to evidence money or property put into a fund by a person who, by subscription or otherwise, becomes a member of a corporate body, is sufficient to make a bequest thereof specific when a testator in his will describes it as "my stock" or "stock standing in my name", for by the use of the words quoted the donor's intent to give the particular property mentioned is disclosed: 18 Am. & Eng. Enc. Law (2 ed.), 718; 2 Beach, Mod. Eq. Jur. § 1043; *Sibley* v. *Perry,* 7 Ves. Jr. 522; *Brainerd* v. *Cowdrey,* 16 Conn. 1. To the same effect, see, also, the notes to the case of *Ashburner* v. *Macguire,* 2 White & Tudor's Leading Cases in Equity, *267.

5. Specific bequests are not favored, and, unless the will clearly discloses the testator's intent to give the thing mentioned, the donation will not be considered of that class: 18 Am. & Eng. Enc. Law (2 ed.), 715. In assigning a reason for this legal principle, Mr. Justice SAWYER says: "Courts have always leaned strongly against construing a legacy as specific when there is any doubt, and such a rule of construction is usually far more favorable to the legatee; for a specific legacy is liable to be adeemed, and therefore entirely lost": *In re Estate of Woodworth,* 31 Cal. 595.

6. We think there can be no doubt that it was the testator's intention to vest the trustees named with the title to the stock mentioned, and, as the description thereof is particular enough to identify the subject-matter of the testamentary gift, the bequest is specific, and hence the corpus of the shares of stock is exonerated from liability on account of the debts of the decedent's estate until a resort thereto becomes necessary by reason of a failure to discharge such obligations from the proceeds of

the sales of the remaining property not specifically devised or bequeathed.

The conclusion reached in regard to the shares of stock also applies to the profits accruing from conducting the business of the corporation.                                    AFFIRMED.

Decided 25 June, 1907.

ON REHEARING.

MR. JUSTICE MOORE delivered the opinion.

This cause was originally submitted on briefs; but, after the opinion was announced, counsel for the various parties were, by order of the court, permitted orally to argue their respective theories. An examination of the legal principles vocally discussed satisfies us that the former opinion should be amended by striking out the whole thereof, commencing with the sentence, "The remaining question," etc., and inserting in the official copy the following paragraph: "The conclusion reached in regard to the shares of stock also applies to the profits accruing from conducting the business of the corporation."

The decree appealed from will therefore be affirmed.

AFFIRMED.