Argued July 17, affirmed September 25, 1917.

## In Re WILSON'S ESTATE.

### (167 Pac. 580.)

**Courts—Executors and Administrators—Jurisdiction—Instructions to Executors—Construction of Will.**

1. Under Article VII, Section 12 of the Constitution, giving County Courts the jurisdiction pertaining to probate courts, and Sections 934, 936 and 1303, L. O. L., relative to the jurisdiction of such courts and to the distribution and payment of legacies, the County Court, in response to a petition of the executors, may direct them to whom property shall be distributed, and, as incidental to this direction, may construe the will.

**Wills—Ambulatory Character and Revocability.**

2. The provisions of a will are subject to change at any time before the death of the testator by making a new will or codicil or by a sale of the property devised or bequeathed or by consuming and destroying it.

**Corporations—Dividends—Persons Entitled—Transfer of Stock.**

3. A dividend is usually considered a part of the corporate property until declared, and will pass with the sale or devise of the stock, but when the dividend is declared, it becomes separate and distinct from the stock, and falls to him who is proprietor of the stock of which it was before an incident.

**Wills—Rights of Legatee of Stock.**

4. A legatee of shares of stock takes the stock as it was at the time of the testator's death.

**Corporations—What Constitutes "Dividend"—Necessity of Formal Declaration.**

5. Where pursuant to formal resolutions a corporation having no debts conveyed property, and upon the receipt of the consideration for the conveyance it was divided between the two individuals who owned all of the stock, except one share issued to a third person to qualify him as director, and they thereafter treated the funds received as their own, this amounted to a "dividend," as a division of profits, without the formality of declaring a dividend is equivalent to a dividend.

[As to when dividend becomes enforceable debt against corporation, see note in Ann. Cas. 1913B, 553.]

**Corporations—Meetings of Directors—Place of Meeting—Ratification.**

6. The informality of a corporate meeting held outside the state may be waived by the shareholders and the act ratified by their subsequent consent and acquiescence.

**Corporations—Ratification of Acts of Officers.**

7. A voidable act by the officers of a corporation may be ratified by the stockholders so as to estop the corporation from afterwards maintaining an action to undo it.

**Corporations—Ratification of Acts of Officers.**

8. Where the owners of all the stock of a corporation divided the proceeds of a sale of corporate property and thereafter treated the funds received as their own, the corporation ratified this division of the proceeds by failing to disavow it after knowledge.

**Wills—Specific or General Bequest.**

9. A bequest of all the stock in a corporation "which I may own at the time of my death" is a specific bequest.

**Wills—Time from Which Will Speaks.**

10. A will speaks only from the death of the testator, unless a contrary intention is manifested from the language of the will or its provisions.

Wills—Bequest of Stock—Effect of Division of Profits.

11. A testator who with another owned all the stock of the corporation bequeathed his stock in the corporation in trust for certain parties, giving his residuary estate to other parties. After the execution of the will the corporation made a sale of property and the two stockholders divided the proceeds of the sale between themselves, and thereafter treated the fund so received as their own. *Held,* that the fund so received by the testator was his property and the property of his estate, and to be distributed in accordance with the will as property of his estate, and not restored to the corporation in order that it might inure to the benefit of the legatee of the stock.

Executors and Administrators—Actions—Costs.

12. Where a proceeding and a suit by executors for a construction of the will of their testator were brought in an honest endeavor to properly administer the estate according to a legal construction of the will, the costs should be borne by the estate as other expenses of administration.

From Multnomah: GEORGE R. BAGLEY, Judge.

In Banc. Statement by MR. JUSTICE BEAN.

This controversy involves the proper construction of the will of Richard Wilson, deceased, and arose substantially in the following manner: On March 1, 1912, Richard Wilson made his will, the provisions of which are in effect as follows: By Article First he directed the payment of his funeral expenses and debts; by Article Second he devised and bequeathed to his wife, Esther B. Wilson, his home in the City of Portland, and its contents, and also all the United States government bonds which he might own at the time of his death; by Article Third he devised and bequeathed to his brother, George Wilson, 664 acres of land near the town of Gresham, in Multnomah County, Oregon, together with the poultry, livestock, farm implements and other personal property thereon; also a half section of land in Gilliam County, Oregon; by Article Fourth he bequeathed to Carl Berg $2,000 to be paid within one year after his death. Articles Fifth, Sixth and Seventh, which have a bearing upon this controversy, we quote at length:

"Article Fifth.

"I hereby give, devise and bequeath unto my executors, hereinafter named, the following described property, to wit:

"1. All of the stock which I may own at the time of my death in the following institutions: (1) The 'First National Bank' of Wallace, Idaho; (2) 'The Exchange National Bank' of Spokane, Washington; (3) the 'Title and Trust Company' of Portland, Oregon; (4) the 'Columbia Life & Trust Company' of Portland, Oregon; (5) and the 'Eubanks Transmission Company' of Portland, Oregon:

"In trust nevertheless for the following uses and purposes:

"It is my wish, and I hereby direct that my said executors shall care for said above described stock, and collect the income therefrom promptly when due, and direct that they distribute such income annually as follows, to wit:

"1. Fifteen per cent (15%) of such income to each of my following named nephews: Harry Noad, of Crampton, Ontario, Canada; William Noad, of Crampton, Ontario, Canada; Richard Noad, of Crampton, Ontario, Canada; Max Noad, of Harriettsville, Ontario, Canada.

"2. Twenty per cent (20%) of such income to each of my following named nieces, to wit: Isabella Eyre, of Crampton, Ontario, Canada; Hilda Couch, of Harriettsville, Ontario, Canada.

"Upon the death of any of said nephews or nieces, I direct that his or her share of said income shall immediately be equally divided among the issue of such deceased nephew or niece, and in case any of said nephews or nieces shall die without leaving any issue, then, and in that event, his or her share of such income shall be divided equally among his or her surviving brothers and sisters.

"I further direct my said executors that when all of my said nephews and nieces shall have died, that all of the above described stock shall be divided equally among the then living issue of my said above named nephews and nieces.

"Article Sixth.

"I hereby give, devise and bequeath unto my said executors the following described property, to wit:

"1. All of my stock in the following corporations: (1) Idaho Investment Company, an Oregon Corporation; (2) Alice Mining Company; (3) Oom Paul Mining Company; (4) Mayflower Mining Company; all of the properties of which companies are situated in the Coeur d'Alene Mining District in the state of Idaho.

"2. Also all of my right, title and interest in all of the property owned by what is known as the Tammany Mining Company in Missoula County, Montana; and also all my right, title and interest in all of the property owned by what is known as the Argo Mining Company in Granite County, Montana.

"In trust nevertheless for the following uses and purposes:

"It is my will and I direct that my said executors shall sell all of the property described in Article Sixth hereof, or any portion thereof, at such times as they may deem advisable, and I direct that they distribute the proceeds derived from the sale of any or all of such property immediately after such proceeds have been received by them, as follows, to wit:

"(a) Twenty per cent (20%) of such proceeds to the Reverend Charles Mackin of the city of Ashland, Oregon;

"(b) Twenty per cent (20%) of such proceeds to Lucilla O'Grady of 67 North 17th Street, in the city of Portland, Multnomah County, State of Oregon.

"(c) Five per cent (5%) of such proceeds to the St. Vincent Hospital, in the city of Portland, State of Oregon;

"(d) Five per cent (5%) of such proceeds to the Sacred Heart Hospital, in the city of Spokane, State of Washington;

"(f) Five per cent (5%) of such proceeds to the Providence Hospital, in the City of Wallace, State of Idaho;

"(g) Five per cent (5%) of such proceeds to St. Patrick's Hospital, in the city of Missoula, State of Montana;

"(h) Ten per cent (10%) of such proceeds to His Grace, Archbishop Alexander Christie, Archbishop of the Diocese of Oregon City, Oregon, and his successors, to be used by him or them in the building of a cathedral in the city of Portland, Oregon; and if, before my death, said His Grace, Archbishop Alexander Christie, or his successors, shall have built such a Cathedral, then said 10 per cent of such proceeds shall be used by said, His Grace, Archbishop Alexander Christie, and his successors, for the benefit of said Diocese of Oregon City, Oregon;

"(i) And twenty-five per cent (25%) of such proceeds to be used by my said executors for the purpose of paying any expenses incurred by them in the care, preservation, or sale of any or all of said property, and any balance of said 25 per cent of such proceeds remaining after the payment of such expenses, shall be delivered immediately after all such property has been sold, to the Sisters of the Holy Names of Jesus and Mary to be held by them for the use and benefit of the Saint Mary's Home for Orphan Girls, at Oswego, Oregon.

"Article Seventh.

"And all of the rest, residue and remainder of my estate and effects, whatsoever and wheresoever, and of whatsoever nature and kind, which at the time of my decease I, or any person or persons in trust for me, am or are possessed of, or entitled to, and not hereinbefore disposed of, I give, devise and bequeath unto the Society of Jesus."

By Article Eighth he nominated and appointed his wife, Esther B. Wilson, Charles Mackin and Walter Mackay, his executors, and provided that if the law at the time of his decease so permitted the Title & Trust Company, an Oregon corporation, of Portland, should act as executor in conjunction with the others

85 Or.—39

named; by Article Ninth he directed that his executors pay the legacy of $2,000 to Carl Berg and all expenses connected with the administration of his estate out of the income derived from the United States Government bonds · mentioned in subdivision 3 of Article Second and from the stock specified in Article Fifth, and the bequests of said bonds and said stock were made subject to this provision; by Article Tenth he revoked all former wills. The will was executed in due form and witnessed by Frederick M. De Neffe and James Conley of Portland.

At that time, March 1, 1912, the Idaho Investment Company was a corporation and the owner of certain mining property in Idaho, among which properties was the ''Cleveland Group of Mines.'' The stock in this company was owned as follows: Richard Wilson, 49 shares; Walter Mackay, 50 shares; and F. M. De Neffe, 1 share, the same being placed in his name in order to qualify him to act as a director, the three stockholders being the directors of the corporation. On September 14, 1912, the Idaho Investment Company duly authorized the sale of its interest in the Cleveland Group of Mines to the Federal Mining & Smelting Company for $180,000. The sale was consummated on September 16, 1912. The purchase price was paid by check payable to the Idaho Investment Company and cashed at once in the First National Bank of Wallace, Idaho. The money was divided by mutual consent between Richard Wilson and Walter Mackay, each taking $90,000. No entry of any report of the closing of the deal nor any declaration of a dividend was made in the records of the corporation. There was no indebtedness of the Investment Company. On May 28, 1913, Richard Wilson died very suddenly in a street-car in Multnomah County, Oregon, and his

will was duly probated in the County Court. Letters
testamentary were issued to the executors named in
the will, with the exception of Esther B. Wilson, who
declined to act, and they went into possession of the
property of the estate. On December 9, 1913, the
Idaho Investment Company in writing requested the
executors of the estate of Richard Wilson, deceased,
to return to it the sum of $90,000, that being one half
of the proceeds of the Cleveland Group of Mines re-
ceived by Richard Wilson in his lifetime. This act
appears to have been taken solely on account of its
effect upon the distribution of the property under the
provisions of the will. The executors not being ad-
vised as to the claim of the Idaho Investment Com-
pany and being in doubt as to the proper construction
of the will of Richard Wilson, deceased, and in order
to be fully advised as to their duty in administering
the estate, petitioned the County Court of the State
of Oregon for advice and direction. A hearing was
had in the probate court upon the issues raised by the
petition of the executors, the answering petitions of
several of the beneficiaries, and the testimony taken
before the probate court. On April 21, 1914, the
court made findings of fact and entered an order
whereby it was ordered and adjudged that the Idaho
Investment Company had no legal or equitable claim
of any kind against the estate of Richard Wilson, de-
ceased, and the executors were ordered and directed
to proceed with the administration and distribution
of the property of the estate under and in accordance
with the provisions of the last will and testament of
said deceased. From such order Charles Mackin,
Walter Mackay, and the Title & Trust Company, as
executors, Lucilla O'Grady, and the other beneficiaries
named in Article Sixth of the will, with the exception

of Charles Mackin, appealed to the Circuit Court for Multnomah County and a hearing was had and a decree entered on January 5, 1916, whereby it was adjudged and decreed that the division of the sum of $180,000 between Walter Mackay and Richard Wilson was to all intents and purposes a dividend of the assets of the Idaho Investment Company, and the sum of $90,000 obtained thereby by Richard Wilson was his property and now belongs to the estate, and the whole thereof, except $5,000 invested in stock of the Eubanks Transmission Company, is the residuum of his estate and is undisposed of except under the residuary clause of his last will and testament. It was further ordered, adjudged and decreed that the executors of said last will and testament proceed with the administration of the estate and the distribution of the property thereof in accordance with the terms of the will and the decree; and that the order, judgment and decree of the County Court in substance be affirmed. From that decree this appeal is taken.

Affirmed.

For appellant, Lucilla O'Grady, there was a brief over the names of *Mr. Hall S. Lusk* and *Messrs. Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. Lusk.*

For appellants, Charles Mackin, Walter Mackay and Title & Trust Company, as executors of the last will and testament of Richard Wilson, deceased, there was a brief and an oral argument by *Mr. F. M. De Neffe.*

For appellant, Convent of the Precious Blood, there was a brief over the names of *Mr. M. G. Munly* and

*Mr. Robert N. Munly,* with an oral argument by *Mr. M. G. Munly.*

For appellants, Archbishop Alexander Christie, St. Vincent's Hospital of Portland, Sacred Heart Hospital of Spokane, a Washington corporation, Providence Hospital of Wallace, Idaho, and St. Patrick's Hospital of Missoula, a Montana corporation, there was a brief and an oral argument by *Mr. Frank T. Collier.*

For respondent, Society of Jesus, there was a brief over the names of *Mr. J. Hennessy Murphy, Messrs. Emmons & Webster,* and *Mr. John G. Shillock,* with oral arguments by *Mr. Lionel R. Webster* and *Mr. Murphy.*

For respondents, Isabella Eyre, William Noad and Hilda Couch, there was a brief over the names of *Mr. C. A. Applegren, Mr. Arthur P. Tifft* and *Messrs. Meredith & Meredith,* with an oral argument by *Mr. Applegren.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. This proceeding is based upon a petition of two of the three executors of the last will and testament of Richard Wilson, deceased, asking the direction of the court in the distribution of the estate under the will. It is shown that the estate is ready for distribution. It is suggested by the appellants that the probate court has no power or jurisdiction to construe the will. In the administration of an estate, of which the County Court has exclusive jurisdiction in the first instance, it is necessary for that court to direct the executors how to proceed, to whom the property in

their hands shall be given, and what each shall receive. It has full power and jurisdiction to respond to such a petition by an appropriate decree. That is one of its functions and duties. It is incumbent upon that court in the disposition of a decedent's estate to collect and preserve the property, pay the debts, and distribute the personal property on hand after the obligations have been paid. In order to effect distribution the distributees and the property each is to receive must first be ascertained and determined. It is for this purpose that in the first proceedings in the administration of an estate an inventory is filed. If a question arises as to the distribution the probate court has the power to direct by its decree the manner of such distribution, and also the power to construe a will as incidental to such direction if that is necessary: Sections 934, 936, and 1303, L. O. L.; Article VII, Section 12, before the last amendment. (The jurisdiction of the County Court has not been changed since that amendment to this section of the Constitution.)

The will which is submitted as part of the petition shows many special bequests with a final residuary paragraph, and is in itself clear, definite, positive, and certain. It would seem that all that is necessary in order to know what is meant by the will is to read it: 40 Cyc., p. 1438.

2-4. As we enter upon the duty imposed, the weight of the responsibility seems lessened when we remember that the court cannot change one "jot or tittle" of the law. It is for us simply to expound it as we find it made for us and the other members of society. Crystallized for the majority it perhaps in some instances resembles ready-made clothing which does not always appear to fit exactly. In other words, the

court cannot revise or make a will for the decedent. It is the function of the court to construe the one made by him and declare its effect. It should be borne in mind that the effect of the provisions of a will is subject to change at any time before the death of the testator. This may be effected in different ways: (1) By making a new will; (2) by a codicil to the will; (3) by a sale of property devised or bequeathed, or by consuming or destroying the same. Mr. Wilson was a man of large experience and business capacity, and when the sale of the Cleveland Group of Mines was made, the money divided, and a portion of it expended by him, he must have understood that the value of the property described in the Sixth Article of the will was thereby affected. It was probably his intention to give the matter further consideration. Without sanctioning the introduction of oral evidence to disclose his intention, if we look at the same, we are convinced that his conversation with Mr. Mackay, his intimate and trusted business associate and friend, in March, two months before he died, when he said to him, "Walter, I want to make a will; will you act as one of my executors?" indicated that he meant just what he said and was referring to something to be done in the future. He died suddenly and did not thereafter do so.

In the interests of the beneficiaries named in the Sixth Article of the will it is claimed that the $180,000 received for the Cleveland mines and divided equally between Wilson and Mackay is still the property of the Idaho Investment Company, and the $90,000 so received by Richard Wilson, deceased, a year before his death, should be returned to that corporation by the executors of his estate; that the same belongs to the stockholders of that company and should go to

the beneficiaries named in the Sixth Article of the will according to its provisions. On the other hand, it is asserted that the ownership of the $90,000 passed from the corporation to Richard Wilson, now deceased, and except for $5,000 thereof invested in stock of the Eubanks Transmission Company, is the residuum of said estate and is not disposed of except under the residuary clause of the last will and testament. The pivotal question in the case is this: What was the effect of the division of the proceeds of the sale of the Cleveland Group of Mines by Richard Wilson, now deceased, and Walter Mackay, the owners of all the stock in the Idaho Investment Company, except one share which was transferred to Mr. De Neffe in order to qualify him to act as a director, and who were also two of the three directors of the corporation? Was it in effect a declaration and payment of a dividend of the profits of the corporation? 1 Cook on Stock and Stockholders (3 ed.), Section 534, says:

"A dividend is a corporate profit set aside, declared, and ordered by the proper corporate authorities to be paid to the stockholders on demand or at a fixed time."

To the same effect see *Williston* v. *Michigan So. etc. R. R. Co.,* 13 Allen (Mass.), 400; *De Koven* v. *Alsop,* 205 Ill. 309 (68 N. E. 930, 63 L. R. A. 587, 590). A dividend is usually considered a parcel of the mass of corporate property until declared and, therefore, incident to and parcel of the stock up to the time it is declared. Before its declaration it will pass with the sale or devise of the stock. Whoever owns the stock prior to the declaration of the dividend owns the dividend also. The moment the dividend is declared then it becomes separate and distinct from the

stock and the dividend falls to him who is proprietor of the stock of which it was before incident. A transfer of stock passes all dividends declared subsequent to the transfer. A legatee of shares takes the stock as it was at the time of the testator's death: *McLaran* v. *Crescent Planing Mill Co.*, 117 Mo. App. 40 (93 S. W. 819, 821). 2 Cook on Corporations (5 ed.), Section 534, says:

"A division of the profits is a dividend even though not called such and not construed such by the directors and stockholders."

In the case of *Grants Pass Hdw. Co.* v. *Calvert*, 71 Or. 103 (142 Pac. 569), there was involved the question of whether certain property, to wit, the Layton Hotel, should be considered dividends so as to have passed out of the corporation before certain stockholders bought stock. A disposition of this property had been made and a controversy arose over the legal effect of what the stockholders and directors had done. Prior to January, 1911, Wolke, Calvert, and Patilla, then owning all the stock in the company and the officers thereof, decided that they would set this property apart as a property dividend for themselves and have a proper conveyance of it made. The company was in good financial condition. This court speaking through Mr. Justice RAMSEY said:

"All the stockholders and the directors appear to have agreed that said property should be disposed of. When they had their annual stockholders' meeting in January, 1911, the secretary made a report, and a dividend was declared, and the Layton Hotel property, valued at $3,666.66, was 'charged off' from the assets of the company, with the understanding that it should be conveyed to Patillo. * * We think that the officers of the plaintiff, when they authorized the making of said deeds, and when the deeds were executed, had knowl-

edge and notice that said property had been set apart as a dividend to be conveyed to the defendants, and that they made said deeds to carry out the said arrangement according to the intention formed by the company when the defendants and Patillo were the directors and sole stockholders thereof. We hold that the transfer of said hotel property to the defendants was, in effect, the payment of a dividend in property in accordance with the previous action and intention of the company. While the proceedings relating thereto, prior to the execution of the deeds, were not very formal, yet the evidence shows what the intention was, and the execution of the deeds carried out that intention fully.''

5. This last case is very much in point. The evidence clearly shows that at the time the mines were sold, Mr. Mackay and Mr. Wilson declared that they might as well divide the proceeds, decided how they should be divided, and they did so divide them. It was in fact a dividend. It seems that there could be no question but that these two men intended the same to be a dividend of the assets of the corporation which they treated as profits. No one else had a right to say nay. No one did say nay. Their actions stood unchallenged during the remainder of the life of Mr. Wilson. Formal resolutions of the corporation authorizing the execution of the deed of the mines had been regularly adopted and entered in the corporate records and it is apparent that as the transaction was had according to the wishes of the only interested parties they considered that there was no reason for further formality. They each proceeded to treat the funds received for the mines as their own and Mr. Wilson with a portion of the money purchased shares of stock in the Eubanks Transmission Company which were bequeathed by the Fifth Article of the will. A division of profits without the formality of declaring

a dividend is equivalent to a dividend: 2 Cook on Corporations (5 ed.), § 534, p. 1136; *Hartley* v. *Pioneer Iron Wks.,* 181 N. Y. 73, 79 (73 N. E. 576).

6-8. The informality of a meeting held outside the state may be waived by the shareholders and the act ratified by their subsequent consent and acquiescence: 10 Cyc. 1193. A voidable act by the officers of the corporation may be ratified by the stockholders so as to estop the corporation from afterwards maintaining an action to undo it: *Little* v. *Garabrant,* 90 Hun (97 N. Y. S. C. R.), 404 (35 N. Y. Supp. 689), affirmed in 153 N. Y. 661 (48 N. E. 1105); *St. Croix Lumber Co.* v. *Mittlestadt,* 43 Minn. 91 (44 N. W. 1079); *Martin* v. *Niagara Falls Paper Mfg. Co.,* 44 Hun (51 N. Y. S. C. R.), 130, affirmed in 122 N. Y. 165 (25 N. E. 303); *Chicago, R. I. & P. Ry. Co.* v. *Union Pac. Ry. Co.,* 47 Fed. 15. The Idaho Investment Company has, and had there been any other shareholders except Mr. Wilson and Mr. Mackay interested, they would have ratified the division of the proceeds of the mines by having failed properly to disavow the same after knowledge: 10 Cyc., p. 1075; *Finnegan* v. *Pacific Vinegar Co.,* 26 Or. 152, 155 (37 Pac. 457); *Silsby* v. *Strong,* 38 Or. 36, 42 (62 Pac. 633); *Marsters* v. *Umpqua Oil Co.,* 49 Or. 374, 378 (90 Pac. 151, 12 L. R. A. (N. S.) 825).

9, 10. Where an individual owns practically all the stock of a corporation and controls all its operations, the corporation and the individual are in proper cases regarded by the courts as one and the same: *Smith* v. *Moore,* 199 Fed. 689, 697 (118 C. C. A. 127); *Linn & Lane Timber Co.* v. *United States,* 196 Fed. 593 (116 C. C. A. 267); *Groh's Sons* v. *Groh,* 80 App. Div. 85 (80 N. Y. Supp. 438). The statement in the Fifth Article of the will ''all of the stock which I may own

at the time of my death" is sufficiently definite and certain to make clear the testator's intention and require such stock to be considered as a specific bequest: *Noon's Estate,* 49 Or. 286, 293, 294 (88 Pac. 673, 90 Pac. 673); 1 Underhill on Wills, § 408; 1 Cook on Corporations (5 ed.), § 302; 40 Cyc., pp. 1869, 1872. A will speaks only from the death of the testator unless a contrary intention is manifest from the language of the will or its provisions: *Gerrish* v. *Hinman,* 8 Or. 348; *Morse* v. *Macrum,* 22 Or. 229 (29 Pac. 615, 30 Pac. 73). The will of Richard Wilson cannot be attacked on the ground that the testator in his lifetime diminished or encumbered any of the bequests made: Section 7323, L. O. L. If the testator had owned a band of horses and, instead of bequeathing all this stock in the Idaho Investment Company, had bequeathed all his horses, no one would contend that such a provision would be changed or affected by any other expression of intention outside the will itself, in case the testator had disposed of all his horses. Let us suppose that one of the mines owned by the Idaho Investment Company which was not sold and the ownership of which passed with the ownership of the shares of stock in that corporation devised by the Sixth Article of the will had been increased in value to the amount of $1,000,000 after the making of the will on account of the development of an adjoining mine, would anyone contend that the same would not rightly belong to the beneficiaries named in the Sixth Article? We think the same rule must be applied whether the value of such shares is increased or diminished. When Richard Wilson made his will it does not seem that he considered that the control of any of the property which he owned, or the right to sell and dispose of the same as he pleased, was in any

way affected.  The transaction which took place when the check for $180,000 in favor of the Idaho Investment Company was received is described by Mr. Mackay as follows:

"Q. When the money was paid just tell the court what you and Mr. Wilson did about it.

"A. Well, we went to the Federal Company's Mining and Smelting office, we transacted the business, surrendered the deed and got a check for $180,000.

"Q. The check was to whom?

"A. The Idaho Investment Company.

"Q. And the deed was executed by the Idaho Investment Company?

"A. Yes, sir.  He was a director of the First National Bank and I was a stockholder and it was after banking hours and I went in the back way, into the back room, and we indorsed the check and he went in the front part of the bank.  He said, 'Walter, we might as well divide this.'  I says, 'Yes.'  He says, 'How will we divide it?'  I says, 'I guess we had better halve it.'  He went out into the front part of the bank and brought me out a deposit check for ninety thousand dollars and he deposited ninety thousand dollars for himself.

"Q. Who indorsed the check 'Idaho Investment Company?'

"A. He indorsed it as president and I indorsed it as treasurer."

The only question that can be raised in regard to the disposition of the funds received for the mines relates to the means adopted to accomplish the result. Walter Mackay and Richard Wilson, as the owners of all the stock, had the right and power to divide that money as they did, but it is contended that they did not take the proper formal legal steps to do so.  Such an objection could be made if anyone else had an interest in the matter other than these two men.  Where all the interests agree and all affirmatively act together

to accomplish a result desired by all of them, any formality becomes unnecessary. As was said by Mr. Justice BENSON in *Mann* v. *W. A. Gordon Co.,* 77 Or. 457 (151 Pac. 704), quoted from Mr. Justice BURNETT, in *Markham* v. *Loveland,* 69 Or. 451 (138 Pac. 483):

"Under modern business conditions, where the commonest every-day transactions are corporate acts, it would be intolerable if everything were required to be proved by a special resolution of the board of directors in each instance."

See, also, *McDonald* v. *Williams,* 174 U. S. 397 (43 L. Ed. 1022, 19 Sup. Ct. Rep. 743).

11. We conclude that the disposition of the $180,000 by two of the three directors, who were the real owners of all the shares of stock when they declared that it should be divided and should be halved, was, in substance and effect, a declaration and payment of a dividend of the assets of the corporation. It was made in the State of Idaho, but it was acquiesced in and acted upon after the return of the parties to the State of Oregon. They did not deem it necessary to make a report of it to anyone as no one else was materially interested in the matter. The two men conducted the business much the same as though it had been a partnership. Each was perfectly satisfied with the result. The money was apparently afterwards considered as the individual property of each and a portion was so invested and used by Mr. Wilson. After the death of one it is too late to brand the transaction as a wrong on account of an informality of which no one at the time had a right to complain or with which to interfere. The $90,000 obtained thereby by Richard Wilson was his property and that secured with a portion thereof, and the funds remaining, are now the property of his estate and should be distrib-

uted in accordance with the provisions of the will. The decree of the trial court is therefore affirmed.

12. In this proceeding and in the separate suit brought by the executors to have the will of Richard Wilson, deceased, construed, an honest endeavor is made for the proper administration of the estate of the decedent according to a legal construction of his last will and testament and the costs should be borne by the estate as other expenses of administration; and it is so ordered.                                    AFFIRMED.

MR. JUSTICE MOORE did not take any part in the consideration of this case.